# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00745-CV

**Richard L. Spradley, Appellant**

**v.**

**Delia Spradley, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. C2013-0194A, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from an order denying a motion to compel arbitration under the Texas Arbitration Act (TAA).[1] It arises from a pending divorce proceeding in which the litigants, appellant Richard L. Spradley and appellee Delia Spradley, mediated pro se and executed a document that purported to be a mediated settlement agreement complying with section 6.602 of the Family Code (the MSA).[2] The MSA stated that it was "effective immediately as a contract . . . and . . . serve[d] as a partition of all property set forth herein to the person to whom such property is awarded," while also contemplating that the parties would subsequently obtain a final

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 171.098(a)(1).

[2] *See* Tex. Fam. Code § 6.602(b) ("A mediated settlement agreement is binding on the parties if the agreement: (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.").

judgment in the divorce proceeding in accordance with the MSA's terms.[3]  However, before the parties finalized and obtained any such judgment, Delia[4] amended her pleadings to instead assert declaratory-judgment claims challenging the MSA's validity and enforceability under both the Family Code and contract law, relying principally on allegations that Richard had induced her into the agreement through fraud and duress.  Richard responded in part by moving to compel arbitration of Delia's challenges, relying on two provisions within the MSA.  The district court denied Richard's motion to compel arbitration, and he perfected this appeal.[5]  We will reverse the district court's order and remand the case to the district court for further proceedings consistent with this opinion.

---

[3]  *See id*. § 6.602(c) ("If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.").

[4]  Because the parties share a common surname, we identify them by their first names instead.

[5]  In the same order, the district court also disposed of a motion by Richard for rendition of judgment based on the MSA, a motion by Delia for summary judgment on her declaratory claims, and related competing objections and motions joining issue as to whether Delia could obtain discovery in support of her claims.  The district court held that the MSA "is subject to contractual defenses and that genuine issues of fact regarding the allegation of statutory defenses and contractual defenses exist."  Accordingly, it denied Delia's summary-judgment motion and also denied Richard's motion to enforce the MSA "pending the resolution of the statutory defense and contractual defense allegations."  Further, in light of these rulings, the district court overruled Richard's discovery objections and compelled him to respond to pending interrogatories from Delia "relating to the issue of statutory and contractual defenses as alleged in [Delia's] Amended Petition."  Richard sought mandamus relief from the district court's refusal to render judgment based on the MSA, which we denied.  *See In re Richard L. Spradley*, No. 03-13-00810-CV, 2013 WL 6805675 (Tex. App.—Austin Dec. 20, 2013, orig. proceeding) (mem. op.).  These other issues are not directly before us in the present proceeding.

As the party seeking to compel arbitration, Richard had the burden of establishing the existence of a valid arbitration agreement whose scope encompasses the dispute at issue.[6] In support of his motion to compel arbitration, Richard attached a copy of the MSA, which contains two provisions requiring arbitration under certain circumstances, which appear within paragraphs 2 and 3:

> 2. The parties agree and stipulate that this Mediated Settlement Agreement provides a basic outline of their complete agreement; however, the parties understand and acknowledge that this Agreement may omit specific details or terms that must be included in an enforceable final order or decree. Consequently, the parties agree that whether this Mediated Settlement Agreement specifically provides the necessary language to make the final order or decree enforceable, the parties intend that the drafting party shall insert all details, appropriate dates, times, locations and notice requirements necessary to make the final order or decree enforceable. Should a disagreement arise over any detail in the final order or decree or other related documents, Robert Geiger, the mediator who facilitated this agreement, shall act as the arbiter of the issue and shall resolve the issue by telephone conference or in a meeting of the attorneys and mediator prior to the date of entry. Such decision of the mediator/arbiter shall be final and binding. The parties understand that the fee for arbitration is greater than the fee for mediation.

> 3. If any other dispute arises with regard to the interpretation or performance of this agreement or any of its provisions, including the necessity and form of closing documents, the parties agree to try to resolve the dispute by telephone conference or meeting with Robert Geiger, the mediator who facilitated this settlement. Any disputes regarding drafting shall be resolved whenever possible by reference to the Texas Family Law Practice Manual. In the event an agreement cannot be reached,

---

[6] *See Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013) (citing *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006)).

The parties agree that this case is governed by the Texas Arbitration Act (TAA) rather than that statute's federal counterpart. However, "[w]hether a case is governed by the Federal Arbitration Act (FAA) or the TAA, many of the underlying substantive principles are the same." *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008). To that extent, we rely on cases applying both statutes.

the mediator shall act as the arbiter of the issue and shall resolve the issue by telephone conference or meeting of the attorneys and mediator prior to the date of entry. Such decision of the mediator/arbiter shall be final and binding. The parties waive any objections to the mediator serving as arbitrator as described herein. The parties acknowledge that fees for arbitration will be greater than those for mediation.

Delia acknowledges that the MSA contains these provisions and does not dispute that they would suffice as valid agreements to arbitrate, but insists that Richard failed to present proof of them to the district court in a form that was admissible as evidence.[7] However, Delia did not preserve any objection to the district court's consideration of the MSA as evidence in support of Richard's arbitration motion, and we conclude that it sufficed as conclusive proof that the parties executed two agreements to arbitrate certain disputes.[8]

The key issue, rather, is whether Delia's challenges to the MSA come within the scope of either of these arbitration provisions. In this regard, we look to the factual allegations Delia has made rather than the legal theories she has asserted.[9] Delia has alleged that the MSA "fails to meet the requisite standards for enforcement pursuant to the Texas Family Code," that "such alleged

---

[7] Additionally, while acknowledging that Richard filed a copy of the MSA as an attachment with his motion to compel arbitration, Delia suggests Richard presented the MSA as support only for his motion for entry of judgment, which was contained within the same document as his arbitration motion. She emphasizes that the motion-for-rendition-of-judgment portion of the document explicitly incorporated the MSA by reference while the motion-to-compel-arbitration portion did not contain such language. Although it is understandable why Delia would advocate this fine distinction, we do not find it persuasive or material.

[8] *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (trial court is to "summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations").

[9] *See Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899-900 (Tex. 1995) (per curiam); *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston 2009 [1st Dist.], no pet.).

4

MSA was procured through fraud and duress on the part of [Richard]," that "such a large amount of community property was not included in such MSA that no meeting of the minds occurred," and, alternatively, that "both parties were operating under a misconception or ignorance of material facts regarding the value of certain items of community property." In short, as Richard observes, these are disputes about the formation, validity, and enforceability of the MSA as a whole, or regarding that of the parties' agreed property division in particular.

Whether these disputes come within the scope of either of the MSA's arbitration provisions turns on contract-construction principles, and thus presents a question of law that we review de novo.[10] Our primary concern is to ascertain the parties' true intention as expressed in the instrument.[11] Ordinarily this is a function of the text the parties have chosen because it is the objective, not subjective, intent that controls.[12] We examine and consider the entire instrument in an effort to harmonize and give effect to all its provisions so that none will be rendered meaningless.[13] No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.[14]

---

[10] *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227-28 (Tex. 2003).

[11] *J.M. Davidson, Inc.*, 128 S.W.3d at 229.

[12] *See Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam) (citing *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)).

[13] *J.M. Davidson, Inc.*, 128 S.W.3d at 229.

[14] *Id.*

There is a "strong presumption favoring arbitration [that] generally requires that we resolve doubts as to the scope of [arbitration] agreements in favor of coverage."[15] "Once an agreement is established, 'a court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue."'"[16]

We conclude that the first of the MSA's two arbitration provisions, the one contained within paragraph 2, does not encompass Delia's disputes regarding the formation, validity, or enforceability of the MSA. This construction is informed by the context in which this arbitration provision appears both within paragraph 2 and within the MSA as a whole. Elsewhere in the MSA, the parties agreed that "[b]y signing this Agreement, [they] request the Court to enter and sign a Judgment on Final Orders in accordance with this agreement," that "either of them shall be entitled to judgment on this Agreement" as provided under the Family Code, that they would "appear in court at the first available date to present evidence and secure rendition of a judgment in accordance with this Mediated Settlement Agreement," and that "a final order shall be prepared by" Delia's counsel. However, the parties also acknowledged within paragraph 2 that Delia's counsel would have to do more than merely copy or incorporate the MSA's terms because "this Mediated Settlement Agreement provides a basic outline of their complete agreement [that] . . . may omit specific details

---

[15] *D. Wilson Constr. Co.*, 196 S.W.3d at 782-83 (citing *In re Kellogg, Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (per curiam) (orig. proceeding)).

[16] *Id*. at 783 (quoting *Prudential Sec. Inc.*, 909 S.W.2d at 899 (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990))).

or terms that must be included in an enforceable final order or decree." Thus, paragraph 2 authorized and required "the drafting party" (i.e., Delia's counsel) to "insert all details, appropriate dates, times, locations and notice requirements necessary to make the final order or decree enforceable." Against this backdrop, paragraph 2 then provides that "[s]hould a disagreement arise over any detail in the final order or decree or other related documents," the same mediator who had facilitated the parties' negotiation of the MSA "shall act as the arbiter of the issue" and render a decision that "shall be final and binding" "prior to the date of entry." Construed in its proper context, a "disagreement . . . over any detail in the final order or decree or other related documents" subject to arbitration under paragraph 2 refers to disputes about the inclusion of proposed terms in the final judgment not included in the MSA but "necessary to make the final order or decree enforceable." Consequently, we agree with Delia that this arbitration provision would not extend to her disputes regarding the formation, validity, and enforceability of the underlying MSA itself.

However, paragraph 3 contemplates a broader range of disputes than does paragraph 2—it is addressed to "any other dispute . . . with regard to the interpretation or performance of this agreement or any of its provisions." As a threshold matter, Delia suggests that this phrase defines the scope only of the issues that the parties have agreed to resolve "by telephone conference or meeting with . . . the mediator who facilitated the [MSA]" and that the scope of issues they agreed to be resolved by arbitration, as contemplated later in paragraph 3, is controlled by the intervening sentence referring to "disputes regarding drafting." That is to say, Delia construes paragraph 3 to prescribe two successive dispute-resolution mechanisms that differ in scope, as follows (with formatting and italics added for emphasis):

7

[1] *If any other dispute arises with regard to the interpretation or performance of this agreement or any of its provisions*, including the necessity and form of closing documents, the parties agree to try to resolve the dispute by telephone conference or meeting with Robert Geiger, the mediator who facilitated this settlement.

[2] *Any disputes regarding drafting* shall be resolved whenever possible by reference to the Texas Family Law Practice Manual. In the event an agreement cannot be reached, the mediator shall act as the arbiter of the issue and shall resolve the issue by telephone conference or meeting of the attorneys and mediator prior to the date of entry. Such decision of the mediator/arbiter shall be final and binding. The parties waive any objections to the mediator serving as arbitrator as described herein. The parties acknowledge that fees for arbitration will be greater than those for mediation.

However, especially in light of the strong presumption in favor of arbitration, we conclude instead that paragraph 3 contemplates two successive dispute-resolution mechanisms whose scope are each defined by the beginning phrase "any other dispute . . . with regard to the interpretation or performance of this agreement," and which would encompass, though not be limited to, "disputes regarding drafting." That is:

[1] *If any other dispute arises with regard to the interpretation or performance of this agreement or any of its provisions*, including the necessity and form of closing documents, the parties agree to try to resolve the dispute by telephone conference or meeting with Robert Geiger, the mediator who facilitated this settlement. Any disputes regarding drafting shall be resolved whenever possible by reference to the Texas Family Law Practice Manual.

[2] In the event an agreement cannot be reached, the mediator shall act as the arbiter of the issue and shall resolve the issue by telephone conference or meeting of the attorneys and mediator prior to the date of entry. Such decision of the mediator/arbiter shall be final and binding. The parties waive any objections to the mediator serving as arbitrator as described herein. The parties acknowledge that fees for arbitration will be greater than those for mediation.

8

Consequently, the controlling question is whether Delia's challenges to the MSA come within "any other dispute . . . with regard to the interpretation or performance of this agreement or any of its provisions."

Richard argues that Delia's challenges come within "any other dispute . . . with regard to the interpretation or performance of this agreement or any of its provisions" because they seek to avoid or prevent performance of the MSA and the specific provisions contemplating further action by the parties to obtain an agreed final judgment. Delia responds that "performance" of the MSA necessarily presumes an agreement that has been validly formed and not fraudulently induced. She similarly contrasts the scope of paragraph 3 with various arbitration clauses that have been held to encompass claims of fraudulent inducement in the broader contract. These "very broad" arbitration provisions, as Delia describes them, have extended to "any controversy or claim arising out of or relating to" the parties' agreement.[17] But, at least under the circumstances here, we fail to see any material distinction between such language and paragraph 3's "*any . . . dispute . . .*" (which if anything would seem to be broader than "any claim" or "any controversy") "*with regard to . . .*" (a phrase synonymous with "relating to" or "concerning."[18]) "the . . . performance of this agreement or any of its provisions." It is certainly reasonable to conclude that Delia's challenges to the validity or enforceability of the MSA would be "disputes" "with regard to" "performance" of the MSA or its terms because they implicate the parties' respective obligations to "perform" under the MSA. At

---

[17] *See, e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967); *In re D. Wilson Constr. Co.*, 196 S.W.3d at 777; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 752.

[18] *See, e.g.*, Webster's Third New Int'l Dictionary 470 (2002) (defining "concerning" as "relating to: regarding, respecting, about"); *id.* at 1911 (defining "regarding" as "with respect to: concerning").

a minimum, we cannot say with "positive assurance" that paragraph 3 is not susceptible to that interpretation.[19] Accordingly, we hold that Richard has met his burden of establishing the existence of a valid arbitration agreement whose scope encompasses Delia's challenges to the MSA.[20]

Once Richard had made this showing, the burden shifted to Delia to raise a defense to the enforcement of the arbitration provision.[21] Importantly, as Delia herself acknowledges, her complaints about the MSA as a whole are not considered to implicate the validity of the arbitration provisions contained within it.[22] Instead, absent an attack on the arbitration provisions themselves—and Delia concedes that she has not presented any here—her challenges to the MSA as a whole are subject to arbitration if they come within the scope of one of those provisions. As we have held that they do, paragraph 3 must be enforced.

In a final rejoinder, Delia argues that Richard failed to establish "conditions precedent" to arbitration under paragraph 3. She emphasizes that, as we have previously observed, arbitration under paragraph 3 is the second component of the dispute-resolution process mandated by that provision and comes into play upon failure of an initial stage in which "the parties . . . try to resolve the dispute by telephone conference or meeting with . . . the mediator who facilitated" the MSA. Delia urges that in order to invoke arbitration under paragraph 3, Richard had the burden of

---

[19] *D. Wilson Constr. Co.*, 196 S.W.3d at 783.

[20] *See Rachal*, 403 S.W.3d at 843.

[21] *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (per curiam) (citing *J.M. Davidson, Inc.*, 128 S.W.3d at 227).

[22] *See Forest Oil Corp.*, 268 S.W.3d at 56; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756 (citing *Prima Paint Corp.*, 388 U.S. at 403-04).

presenting evidence that the parties have already pursued the mediation stage unsuccessfully.  As an initial observation, we find no indication in the record that Delia ever preserved this contention for appeal.[23]  And leaving error preservation aside, Delia's argument merely points out that the arbitration procedure to which she agreed in paragraph 3 entails mediation as an initial step.

Accordingly, we reverse the district court's order denying Richard's motion to compel arbitration and remand the case with instructions to abate further proceedings pending the parties' resort to the dispute-resolution mechanisms prescribed by paragraph 3 of the MSA.[24]

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Remanded

Filed:   March 26, 2014

---

[23] *See* Tex. R. App. P. 33.1; *In re L.M.M.*, 247 S.W.3d 809, 812 (Tex. App.—Dallas 2008, pet. denied) (holding that mother could not raise new argument against enforcement of MSA for first time on appeal).

[24] *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753-54 ("Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings.").