# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 11-0708

═══════════════

HAL RACHAL, JR., PETITIONER,

v.

JOHN W. REITZ, RESPONDENT

══════════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

══════════════════════════════════════════════════════════

**Argued November 7, 2012**

Federal and state policies favor arbitration for its efficient method of resolving disputes, and

arbitration has become a mainstay of the dispute resolution process.[1]  Today we determine whether

these policies render an arbitration provision contained in an *inter vivos* trust enforceable against the

trust beneficiaries.  The trust here contained a provision requiring all disputes regarding the trust and

the trustee to proceed to arbitration.  When a trust beneficiary sued the trustee, the trustee moved to

compel arbitration.  The trial court denied the motion.  The court of appeals, sitting *en banc*,

affirmed, concluding that the provision could not be enforced under the Texas Arbitration Act (TAA)

because there was no agreement to arbitrate trust disputes.[2]  We conclude that the arbitration

provision contained in the trust at issue is enforceable against the beneficiary for two reasons.  First,

---

[1] *See AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1749 (U.S. 2011); *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 94 & n.48 (Tex. 2011); *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011).

[2] 347 S.W.3d 305, 311.

the settlor determines the conditions attached to her gifts, and we enforce trust restrictions on the basis of the settlor's intent. The settlor's intent here was to arbitrate any disputes over the trust. Second, the TAA requires enforcement of written agreements to arbitrate, and an agreement requires mutual assent, which we have previously concluded may be manifested through the doctrine of direct benefits estoppel. Thus, the beneficiary's acceptance of the benefits of the trust and suit to enforce its terms constituted the assent required to form an enforceable agreement to arbitrate under the TAA. We reverse the judgment of the court of appeals and remand to the trial court to enter an order consistent with this opinion.

## I. Background

Andrew Francis Reitz established the A.F. Reitz Trust in 2000, naming his sons, James and John, as sole beneficiaries and himself as trustee. The trust was revocable during Andrew's lifetime and irrevocable after his death. Upon Andrew's death, Hal Rachal, Jr., the attorney who drafted the trust, became the successor trustee.

In 2009, John Reitz sued Rachal individually and as successor trustee, alleging that Rachal had misappropriated trust assets and failed to provide an accounting to the beneficiaries as required by law. Reitz sought a temporary injunction, Rachal's removal as trustee, and damages.

Rachal generally denied the allegations and later moved to compel arbitration of the dispute under the TAA, relying on the trust's arbitration provision. That provision states:

> Arbitration. Despite anything herein to the contrary, I intend that as to any dispute of any kind involving this Trust or any of the parties or persons concerned herewith (e.g., beneficiaries, Trustees), arbitration as provided herein shall be the sole and exclusive remedy, and no legal proceedings shall be allowed or given effect except as they may relate to enforcing or implementing such arbitration in accordance

2

herewith. Judgment on any arbitration award pursuant hereto shall be binding and enforceable on all said parties.

The trust further provided that "[t]his agreement shall extend to and be binding upon the Grantor, Trustees, and beneficiaries hereto and on their respective heirs, executors, administrators, legal representatives, and successors."

The trial court denied Rachal's motion to compel and Rachal filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1) (authorizing interlocutory appeal for orders denying applications to compel arbitration). A divided court of appeals, sitting *en banc*, affirmed the trial court's order. 347 S.W.3d 305, 312. The court of appeals held that a binding arbitration provision must be the product of an enforceable contract between the parties, reasoning that such a contract does not exist in the trust context, in part because there is no consideration and in part because the trust beneficiaries have not consented to such a provision. *Id.* at 308, 310–11. The court further concluded that because there is no contractual agreement to arbitrate in this context, it is for the Legislature, rather than the courts, to decide "whether and to what extent the settlor of this type of a trust should have the power to bind the beneficiaries of the trust to arbitrate." *Id*. at 311–12.

The four dissenting Justices reasoned that further legislation is not necessarily required because a trust can be "a written agreement to arbitrate" within the meaning of the TAA even without the signatures of the beneficiaries and successor trustee. 347 S.W.3d at 312–13 (Murphy, J., dissenting) (quoting TEX. CIV. PRAC. & REM. CODE § 171.001(a)). The dissent notes that the TAA does not require a formal contract to arbitrate but only a written agreement, a broader term that includes legal contracts but also less formal agreements. *Id*. The dissent concludes that, because the

3

Legislature chose the broader term "agreement" in the TAA, rulings in other jurisdictions that arbitration provisions in trusts are unenforceable are inapplicable to arbitration provisions under the TAA. *Id*. at 313–14. We granted the trustee's petition to decide whether an arbitration provision under the TAA in an *inter vivos* trust is enforceable against trust beneficiaries.[3]

## II. Discussion

### A. Standard of Review

Rachal moved to compel arbitration under the TAA, which provides that a "written agreement to arbitrate" is enforceable if it provides for arbitration of either an existing controversy or one that arises "between the parties after the date of the agreement." TEX. CIV. PRAC. & REM. CODE § 171.001(a). As a threshold matter, a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement. *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006).

We review de novo whether an arbitration agreement is enforceable. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). When reviewing a denial of a motion to compel arbitration, we defer to the trial court's factual determinations that are supported by evidence but review the trial court's legal determinations de novo. *Id*.

This case also requires us to construe a statute. Our primary goal in construing a statute is to give effect to the Legislature's intent. *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We defer to

---

[3] Although a court of appeals' decision in an interlocutory appeal is ordinarily final, this Court has jurisdiction to review the appellate court's decision when, as here, there is a dissent in the court of appeals. TEX. GOV'T CODE §§ 22.001(a), 22.225(b)(3), 22.225(c).

4

the plain meaning of a statute as the best indication of the Legislature's intent unless a different meaning is apparent from the context of the statute or the plain meaning would yield absurd results. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Moreover, we determine legislative intent from the entire act, not merely from isolated portions. *Ruttiger*, 381 S.W.3d at 454; *TGS-NOPEC*, 340 S.W.3d at 439.

### B. Trusts and the TAA

Rachal echoes the dissenting justices' view that the TAA does not require a formal contract but rather only an agreement to arbitrate future disputes. Reitz argues that even if the TAA requires only an agreement to arbitrate—as opposed to a formal contract—the trust instrument here does not meet that less exacting standard because it lacks mutual assent and unity in thought between its parties. We agree with Rachal.

### 1. Settlor's Intent

Generally, Texas courts endeavor to enforce trusts according to the settlor's intent, which we divine from the four corners of unambiguous trusts. *Frost Nat'l Bank of San Antonio v. Newton*, 554 S.W.2d 149, 153 (Tex. 1977); *see also Huffman v. Huffman*, 339 S.W.2d 885, 888 (Tex. 1960) ("Assuming that there is a valid will to be construed, it is the place of the court to find the meaning of such will, and not under guise of construction or under general powers of equity to assume to correct or redraft the will in which testator has expressed his intentions." (quotation marks omitted)). We enforce the settlor's intent as expressed in an unambiguous trust over the objections of beneficiaries that disagree with a trust's terms. *Newton*, 554 S.W.2d at 153. For example, in *Newton*, a trust provided for a portion of the trust to be distributed for the education of certain

5

student beneficiary relatives, with excess income paid during the life of the trust to other relatives who would receive the ultimate distribution when the trust terminated. *Id*. at 151–52. The trust provided that the trustee could terminate the trust if the income was insufficient. *Id*. at 151. When the student beneficiaries completed their education, the ultimate beneficiaries argued the trust should be terminated because its primary purpose had been accomplished. *Id*. at 153. But we noted the additional purpose of the trust was the payment of excess income to those ultimate beneficiaries and refused to distinguish between the two purposes as primary or secondary because it would require venturing beyond the settlor's intent in the express language of the trust. *Id*. at 154. Accordingly, we enforced the trust with the restriction that the settlor intended: that the trust only terminate when the income was insufficient. *Id*.; *see also Moore v. Smith*, 443 S.W.2d 552, 555–56 (Tex. 1969) (assessing settlor's intent by examining the four corners of the trust).

Here, the settlor unequivocally stated his requirement that all disputes be arbitrated. He specified that, "[d]espite anything herein to the contrary," arbitration would be "the sole and exclusive remedy" for "any dispute of any kind involving this Trust or any of the parties or persons connected herewith (e.g., beneficiaries, Trustees) . . . ." Because this language is unambiguous, we must enforce the settlor's intent and compel arbitration if the arbitration provision is valid and the underlying dispute is within the provision's scope. *Meyer*, 211 S.W.3d at 305.

### 2. The TAA

The TAA provides that a "written *agreement* to arbitrate is valid and enforceable if the *agreement* is to arbitrate a controversy that: (1) exists at the time of the *agreement*; or (2) arises between the parties after the date of the *agreement*." TEX. CIV. PRAC. & REM. CODE § 171.001(a)

(emphases added). The TAA further states that a "party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a *contract*." *Id*. § 171.001(b) (emphasis added). The Legislature specifically chose to enforce "agreements" to arbitrate. *Id*. § 171.001(a). It knew how to enforce only "contracts;" it selected that term to specify the grounds for revoking an agreement to arbitrate. *Id*. § 171.001(b). The language of the TAA indicates legislative intent to enforce arbitration provisions in agreements. If the Legislature intended to only enforce arbitration provisions within a contract, it could have said so. *See id*.; *TGS-NOPEC*, 340 S.W.3d at 441 ("The meaning of a word that appears ambiguous when viewed in isolation may become clear when the word is analyzed in light of the terms that surround it.").

Because the TAA does not define agreement, we must look to its generally accepted definition. *TGS-NOPEC*, 340 S.W.3d at 439. Black's Law Dictionary defines an agreement as "a manifestation of mutual assent by two or more persons." BLACK'S LAW DICTIONARY 78 (9th ed. 2009). Contract treatises have made similar observations. Williston commented:

> An agreement, as the courts have said, "is nothing more than a manifestation of mutual assent by two or more legally competent persons to one another." In some respects, the term agreement is a broader term than contract, and even broader than the term bargain or promise. It covers executed sales, gifts, and other transfers of property.

1 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 1:3, at 13–14 (4th ed. 1990) (citations omitted); *see also* 3 STEPHEN'S COMMENTARIES ON THE LAWS OF ENGLAND 4 (Edward Jenks ed., 17th ed. 1922) ("The term 'agreement,' although frequently used as synonymous with the word 'contract,' is really an expression of greater breadth of meaning and less technicality. Every contract is an agreement; but not every agreement is a contract. In its colloquial

sense, the term 'agreement' would include any arrangement between two or more persons intended to affect their relations (whether legal or otherwise) to each other."). Thus, although an agreement need not meet all the formal requirements of a contract, it must be supported by mutual assent.[4] BLACK'S LAW DICTIONARY 78 (9th ed. 2009); 1 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 1:3, at 13–14 (4th ed. 1990).

We therefore address whether the trust here was supported by the mutual assent required to render the trust an agreement and the arbitration provision valid. Typically, a party manifests its assent by signing an agreement. *See Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) (holding that, in formal contract negotiations, signing the contract is not required so long as there is assent). But we have also found assent by nonsignatories to arbitration provisions when a party has obtained or is seeking substantial benefits under an agreement under the doctrine of direct benefits estoppel.[5] For example, in the case of *In re FirstMerit Bank, N.A.*, the de los Santos plaintiffs purchased a mobile home for their daughter and her husband (the Alvarezes, their co-plaintiffs) under a retail installment financing agreement with the seller. 52 S.W.3d 749, 752 (Tex. 2001). The agreement contained an arbitration addendum. *Id.*

---

[4] We acknowledge that we have previously discussed arbitration agreements under contract principles. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003) ("Arbitration agreements are interpreted under traditional contract principles. Thus, an employer attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements." (citations omitted)). Those holdings are not in tension with our analysis here in light of Rachal's arguments, our long-standing deference to the settlor's intent, and the unique requirements of the TAA.

[5] We have noted that there are at least six theories in contract and agency law that may bind nonsignatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005). Direct benefits estoppel, discussed herein, is a type of equitable estoppel. *Id.*

at 752. The de los Santoses signed the agreement but the Alvarezes did not. *Id*. at 752, 755. The seller assigned the contract to FirstMerit Bank, and the de los Santoses ceased making payments when the seller failed to make certain repairs. *Id*. at 753. FirstMerit took possession of the home, the de los Santoses and the Alvarezes both sued, and FirstMerit moved to compel arbitration. *Id*. We stated: "a litigant who sues based on a contract subjects him or herself to the contract's terms." *Id*. at 755. We thus held that, even though the Alvarezes did not sign the contract containing the arbitration clause, their suit on the contract was their assent to the contract's terms, including the arbitration provision. *Id*. at 755–56. We later noted that in addition to filing suit on the contract, the Alvarezes' occupancy of the home and planned future ownership of it further indicated their acceptance of the contract. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 134 (Tex. 2005).

We expressly adopted the federal doctrine of direct benefits estoppel in the context of arbitration agreements under state law in *In re Kellogg Brown & Root, Inc.*, where we held that a non-signatory who is seeking the benefits of a contract or seeking to enforce it "is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." 166 S.W.3d 732, 739 (Tex. 2005). As the Fourth Circuit described it, "the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (quoted in *Kellogg Brown & Root*, 166 S.W.3d at 739). We noted in *Kellogg Brown & Root* that if the claims are based on the agreement, they must be arbitrated, but if the claims can stand independently of the

9

agreement, they may be litigated. 166 S.W.3d at 739–40; *see also In re U.S. Home Corp.*, 236 S.W.3d 761, 765 (Tex. 2007) (per curiam).

In *Weekley Homes*, we addressed the circumstances under which direct benefits estoppel binds parties for actions other than filing suit. 180 S.W.3d at 131–32. There, we stated that a "nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself" during the performance of the agreement. *Id*. at 132–33. We likened the situation to promissory estoppel, where a promisor induces substantial action or forbearance by another and estoppel requires enforcing the promise to prevent injustice. *Id*. at 133. There, the plaintiff never signed the agreement to purchase the newly constructed home but claimed the authority of the agreement in directing the construction and repair of the home, submitted reimbursement claims for expenses incurred during repairs, and conducted settlement negotiations with the builder. *Id*. We held that these were sufficiently substantial actions demanding the builder comply with the contract to equitably estop the plaintiff from resisting the agreement's arbitration provision. *Id*.

We must examine here whether the direct benefits estoppel doctrine applies to an arbitration provision in a trust. A beneficiary may disclaim an interest in a trust. *See* TEX. PROP. CODE § 112.010; *see also Aberg v. First Nat'l Bank*, 450 S.W.2d 403, 407 (Tex. App.—Dallas 1970, writ ref'd n.r.e.) (stating the well-settled rule that a trust beneficiary who has not manifested his acceptance of a beneficial interest may disclaim such interest). And a beneficiary is also free to challenge the validity of a trust: conduct that is incompatible with the idea that she has consented to the instrument. *See Rapid Settlements, Ltd. v. SSC Settlements, LLC*, 251 S.W.3d 129, 148 (Tex. App.—Tyler 2008, no pet.) (holding direct benefits estoppel inapplicable when a nonsignatory filed

10

suit for a declaration that an arbitration agreement was not binding on it). Thus, beneficiaries have the opportunity to opt out of the arrangement proposed by the settlor.

On the other hand, a beneficiary who attempts to enforce rights that would not exist without the trust manifests her assent to the trust's arbitration clause. For example, a beneficiary who brings a claim for breach of fiduciary duty seeks to hold the trustee to her obligations under the instrument and thus has acquiesced to its other provisions, including its arbitration clause. In such circumstances, it would be incongruent to allow a beneficiary to hold a trustee to the terms of the trust but not hold the beneficiary to those same terms.

Here, Reitz both sought the benefits granted to him under the trust and sued to enforce the provisions of the trust. On the death of the settlor, Reitz did not disclaim an interest in the trust, and his suit directly seeks actual damages for any amounts inappropriately taken from the trust. *See* TEX. PROP. CODE § 112.010 (presuming a beneficiary accepts an interest in a trust and establishing time period to disclaim that interest). Reitz also sued to enforce the trust's provisions against the trustee. The trust specifically prohibited the trustee from making "any distribution to or for the benefit of himself which is not subject to an ascertainable standard under the Code" and contained a number of other powers of and restrictions on the trustee. Reitz claimed Rachal "has materially violated the terms of the Trust and his fiduciary duty by failing to account to the beneficiary and . . . has materially violated th[e] terms of the Trust by his conversion of the Trust assets which has resulted in material financial loss to the Trust." Reitz further claimed, among other things, he was "entitled to any profits that would accrue to the trust estate if there had been no breach of trust." In accepting the benefits of the trust and suing to enforce its terms against the trustee so as to recover damages,

11

Reitz's conduct indicated acceptance of the terms and validity of the trust.[6]  In sum, we hold the doctrine of direct benefits estoppel applies to bar Reitz's claim that the arbitration provision in the trust is invalid.  *See Weekley Homes*, 180 S.W.3d at 131–32; *Kellogg Brown & Root*, 166 S.W.3d at 739–40; *FirstMerit Bank*, 52 S.W.3d at 755–56.

Reitz argues, however, that direct benefits estoppel cannot apply here because there is no underlying contract.  We have generally applied direct benefits estoppel when there is an underlying contract the claimant did not sign, but we have never held a formal contract is required for direct benefits estoppel to apply.  Indeed, in *Weekley Homes*, we likened direct benefits estoppel to the defensive theory of promissory estoppel.  180 S.W.3d at 133.  "[T]he promissory-estoppel doctrine presumes no contract exists."  *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002) (citing *Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex. 1965)); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 90 & ch. 4, topic 2, intro. note (1981) (addressing promissory estoppel as one of several types of contracts that need not be supported by consideration to be enforceable).  As equitable defensive theories, direct benefits estoppel and promissory estoppel promote fairness by holding a party to its position in the performance of an agreement or in bringing litigation.  *See Weekley Homes*, 180 S.W.3d at 133; *Kellogg Brown & Root*, 166 S.W.3d at 740–41; *FirstMerit Bank*, 52 S.W.3d at 755.  A valid, underlying contract is not required under these theories,

---

[6] Although we specified in *Kellogg Brown & Root* that claims are only subject to arbitration if they are based on the agreement containing the arbitration provision, the parties do not dispute here that the claims refer to and depend upon the trust.  166 S.W.3d at 739–40.

nor is it required here; thus, Reitz's argument is without merit. *See Subaru of Am.*, 84 S.W.3d at 226.[7]

### 3. Other Jurisdictions

Reitz points to the holdings of two courts in sister states that support his view that arbitration provisions in trusts are unenforceable. There is a dearth of authority as to the validity of an arbitration provision in a trust, and the opinions Reitz relies on have been superseded. The two courts—both intermediate courts—that considered this precise issue declined to enforce mandatory arbitration provisions in trusts. *See Diaz v. Bukey*, 125 Cal. Rptr. 3d 610, 615 (Ct. App. 2011), *pet. granted*, 257 P.3d 1129 (Cal. 2011), *remanded with directions*, 287 P.3d 67 (Cal. 2012); *Schoneberger v. Oelze*, 96 P.3d 1078, 1079 (Ariz. Ct. App. 2004), *superseded by statute*, ARIZ. REV. STAT. § 14-10205. These courts generally concluded that a trust's arbitration provision is not enforceable because a trust is not a contract between the grantor, trustee, and beneficiary and thus does not bind those who do no sign the instrument to arbitrate future trust disputes. This bright-line distinction between trusts and contracts was first discussed in *Schoneberger*, where an Arizona court of appeals explained:

> Arbitration rests on an exchange of promises. Parties to a contract may decide to exchange promises to substitute an arbitral for a judicial forum . . . . In contrast, a trust does not rest on an exchange of promises. A trust merely requires a trustor to transfer a beneficial interest in property to a trustee who, under the trust instrument . . . holds that interest for the beneficiary. The undertaking between trustor and trustee does not stem from the premise of mutual assent to an exchange of promises and is not properly characterized as contractual.

---

[7] Reitz has not asserted, and we thus need not decide, whether the doctrine of unclean hands bars Rachal from relying on the equitable doctrine of direct benefits estoppel.

96 P.3d at 1083 (internal citations and quotations omitted). A California intermediate court later adopted the Arizona court's explication. *Diaz*, 125 Cal. Rptr. 3d at 615. The court of appeals here followed the analysis in *Schoneberger*. 347 S.W.3d at 310–11.

But the Arizona Legislature superseded *Schoneberger* and the California Supreme Court vacated *Diaz*. Unlike the TAA's requirement that the arbitration provision be in an "agreement," the Arizona statute at issue in *Schoneberger* required the arbitration provision to be "in a written contract."[8] 96 P.3d at 1082. The Arizona Legislature superseded *Schoneberger*, providing that: "A trust instrument may provide mandatory, exclusive and reasonable procedures to resolve issues between the trustee and interested persons or among interested persons with regard to the administration or distribution of the trust." ARIZ. REV. STAT. § 14-10205.[9]

A California appellate court followed *Schoneberger* in refusing to enforce an arbitration provision in a trust. *Diaz*, 125 Cal. Rptr. 3d at 615. The California statute at issue, like the Texas statute, addresses arbitration provisions in "written agreements." CAL. CIV. PROC. CODE § 1281.1 ("[A]ny request to arbitrate . . . shall be considered as made pursuant to a written agreement to submit a controversy to arbitration."). The California Supreme Court instructed the court of appeals to vacate its decision and reconsider the case in light of *Pinnacle Museum Tower Association v. Pinnacle Market Development (US), LLC*, 282 P.3d 1217 (Cal. 2012). *Diaz v. Bukey*, 287 P.3d 67,

---

[8] The District of Columbia Court of Appeals has applied the same reasoning to decline to enforce a mandatory arbitration provision in a will. *In re Calomiris*, 894 A.2d 408, 410 (D.C. 2006). The court based its holding on Washington D.C.'s arbitration act, which—like Arizona's statute—refers to a contract rather than an agreement. *Id*. at 409.

[9] Florida has also enacted a statute providing for the arbitration of some trust disputes. FLA. STAT. § 731.401. Rachal suggests that this legislation was necessary because that arbitration statute required contracts rather than agreements to arbitrate.

67 (Cal. 2012). In *Pinnacle*, a condominium developer included a mandatory arbitration provision in the recorded declaration of restrictions, which also provided for the creation of an owners' association. *Id*. at 1221–22. The association sued the developer for construction defects, and the developer moved to compel arbitration based on the provision in the declaration of restrictions. *Id*. at 1223. The California Supreme Court held that the Federal Arbitration Act applied to the provision in question, which refers to arbitration provisions "in . . . a contract." *Id*. (quoting 9 U.S.C. § 2). The court held that the recorded declaration was contractual in nature, despite the fact that the individual owners—not the owners' association—agreed to be bound by the declaration, and that enforcing the arbitration provision against the owners' association was not unconscionable. *Id*. at 1228–29, 1233–34. The court of appeals has yet to issue its new opinion in light of *Pinnacle*.

We note that other courts, while not addressing the precise issue raised here, have nonetheless favorably viewed arbitration provisions in trusts. *See, e.g.*, *Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co.*, 638 F. Supp. 2d 443, 458 (E.D. Pa. 2009) (remanding a trust dispute involving a rescission claim to arbitration while retaining jurisdiction over questions of interpretation that arise during the arbitration); *Roehl v. Ritchie*, 54 Cal. Rptr. 3d 185, 187 (Ct. App. 2007) (determining that judicial confirmation of an open-ended arbitration award in a trust dispute did not bar a subsequent arbitration to resolve undetermined issues); *see also New S. Fed. Sav. Bank v. Anding*, 414 F. Supp. 2d 636, 643 (S.D. Miss. 2005) (noting that an arbitration provision in deed of trust is "not unenforceable solely because it is one-sided").

## C. Scope

Having determined the arbitration provision at issue is enforceable against Reitz, Rachal must also establish that the dispute is within the scope of the agreement. *Meyer,* 211 S.W.3d at 305. Once a valid arbitration agreement is established, a "strong presumption favoring arbitration arises" and we resolve doubts as to the agreement's scope in favor of arbitration. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011). Reitz asserts that his lawsuit falls outside the scope of the agreement because the trust's terms indicate the settlor's intent to exempt trustee misconduct claims from the scope of the arbitration provision. We disagree.

When determining whether claims fall within the scope of the arbitration agreement, we look to the factual allegations, not the legal claims. *FirstMerit Bank*, 52 S.W.3d at 754. The arbitration provision here requires that:

> Despite anything herein to the contrary, I intend that as to any dispute of any kind involving this Trust or any of the parties or persons concerned herewith (e.g., beneficiaries, Trustees), arbitration as provided herein shall be the sole and exclusive remedy, and no legal proceedings shall be allowed or given effect except as they may relate to enforcing or implementing such arbitration in accordance herewith.

Reitz's suit against Rachal to enforce the trust's restrictions qualifies as "any dispute of any kind involving this Trust or any of the parties or persons connected herewith."

Reitz nonetheless argues that a subsequent provision in the trust regarding exoneration of trustees indicates an intent to allow for litigation of disputes with the trustee. The provision Reitz relies on refers to a trustee's liability for unintentional misconduct and permits the trustee to fund litigation or dispute related costs from the trust, providing that a beneficiary who initiates the proceedings without good faith shall have the defense costs deducted from his share of the trust income and assets. This provision does not defeat the arbitration requirement for two reasons. First,

16

to the extent the two provisions conflict, the arbitration provision—by its own terms—prevails over "anything herein to the contrary." Second, the trustee exoneration provision, when read in conjunction with the arbitration provision, still has meaning. Even if the arbitration provision requires that all disputes over the trust be resolved in arbitration, the trustee exoneration provision is effective in at least two situations: (1) when a claim filed in court is then sent to arbitration, and (2) when a claim is filed in, and stays in, court because direct benefits estoppel or another doctrine that would compel arbitration does not apply. Under the first scenario, the trustee exoneration provision simply acknowledges that some claims that belong in arbitration will be initiated in court and determines how these defense costs are paid. Under the second scenario, not all claims initiated in court can be compelled to arbitration. We previously noted that the doctrine of direct benefits estoppel will not provide the mutual assent necessary to compel arbitration in all circumstances. One who does not accept benefits under a trust and contests its validity could not be compelled to arbitrate the trust dispute under the doctrine of direct benefits estoppel. In such a case, the trustee exoneration provision determines how these defense costs are paid. Our construction of the arbitration and trustee exoneration privileges gives meaning to both provisions. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951). In sum, Rachal demonstrated the existence of a valid arbitration agreement that covers the claims at issue.

### III. Conclusion

Beneficiary Reitz sued trustee Rachal to require him to comply with the terms of the trust at issue, which contains an arbitration provision. The TAA requires arbitration provisions to be in

written agreements. Reitz's assent to the trust is reflected in his acceptance of the benefits of the trust and his suit to compel the trustee to comply with the trust's terms. Reitz's claims that Rachal violated the terms of the trust are within the scope of the arbitration provision, which requires the arbitration of "any dispute of any kind involving this Trust." Thus, Rachal carried his burden of demonstrating that the trust contains a valid arbitration agreement that covers Reitz's claims. We reverse the judgment of the court of appeals and remand to the trial court to enter an order consistent with this opinion.

_____

Eva M. Guzman
Justice

OPINION DELIVERED:  May 3, 2013

18