**AFFIRM; and Opinion Filed June 17, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01341-CV

### PHILLIP DALE ARCHER AND CRYSTAL LYNN ARCHER, Appellants
### V.
### DAVID ALAN ARCHER, STEVEN LEE ARCHER, AND ANITA SUE HUNTER,
### Appellees

### On Appeal from the 95th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 12-01204

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Fillmore

Phillip Dale Archer (Phillip) and Crystal Lynn Archer (collectively appellants) bring this

interlocutory appeal from the trial court's order denying their motion to compel arbitration. *See*

TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (West 2011) (permitting interlocutory

appeal from trial court's order denying motion to compel arbitration). We affirm the trial court's

order.

### Background[1]

On July 14, 2006, Clarence Archer (Clarence) and Mildred Archer (Mildred) executed a

document forming The Archer Living Trust (the Trust). Clarence and Mildred were the grantors,

trustees, and primary beneficiaries of the Trust. Other than one specific bequest not relevant to

---

[1] Because the record on appeal does not contain a reporter's record of the hearing on appellees' motion to compel, the facts set out in this opinion are taken from appellees' petition and appellants' motion to compel, both of which are contained in the clerk's record.

this appeal, upon the death of both Clarence and Mildred, the Trust assets were to be distributed to five separate trusts for the benefit of appellants and appellees, who are Clarence and Mildred's children.

Clarence died on March 29, 2009. After Clarence's death, Mildred acted as the sole trustee for the Trust. On June 14, 2010, Mildred resigned as trustee, and Phillip was named as the successor trustee. Mildred died on June 18, 2010.

On February 2, 2012, appellees filed this suit, alleging that Phillip had committed a breach of trust and fiduciary duty and requesting that (1) Phillip be compelled to perform his duties and to redress each breach of trust, be enjoined from committing a breach of trust, and be ordered to account for the assets of the Trust, and (2) any compensation to Phillip as successor trustee be reduced or denied. Appellees further sought a declaratory judgment ordering Phillip to provide a detailed accounting of the Trust's assets and to disburse all Trust property to each child as trustee for his or her separate trust; determining the entitlement, amount, and rights regarding fiduciary fees paid to Phillip or on Phillip's behalf; settling the accounts of Clarence's estate and the Trust; directing Phillip to distribute the Trust's property to the residuary beneficiaries; and determining and resolving any questions arising that relate to the administration of the Trust or construction of the terms contained in the Trust document.

Appellants moved to compel arbitration pursuant to the Uniform Arbitration Act as adopted by Texas in the Texas General Arbitration Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098 (West 2011); *In re Gulf Exploration, LLC*, 289 S.W.3d 836, 839 (Tex. 2009) (orig. proceeding) (most states, including Texas, have adopted Uniform Arbitration Act). In support of their motion, appellants attached the Trust document and relied on a provision of the document that stated:

**Section 14.02  No Court Proceedings**

This trust shall be administered expeditiously, consistent with the provisions of this agreement, free of judicial intervention, and without order, approval or action of any court. The trust shall be subject to the jurisdiction of a court only if our Trustee or another interested party institutes a legal proceeding. A proceeding to seek instructions or a court determination shall be initiated in the court having original jurisdiction over matters relating to the construction and administration of trusts. Seeking instructions or a court determination shall not subject this trust to the continuing jurisdiction of the court.

We request that any questions or disputes that may arise during the administration of this trust be resolved by mediation and if necessary, arbitration in accordance with the Uniform Arbitration Act. Each interested party involved in the dispute (including our Trustee, if involved) shall select an arbiter and, if necessary to establish a majority decision, the arbiters shall select an additional arbiter. The decision of a majority of the arbiters selected shall control with respect to the matter.

The trial court denied the motion to compel arbitration.

## Analysis

In their sole issue, appellants contend the trial court erred by denying their motion to compel arbitration because section 14.02 of the Trust document contains a valid agreement to arbitrate. We review de novo whether a valid arbitration agreement exists and whether that agreement is enforceable. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). When reviewing a denial of a motion to compel arbitration, we defer to the trial court's factual determinations that are supported by the evidence, but review the trial court's legal determinations de novo. *Rachal*, 403 S.W.3d at 843.

Arbitration cannot be ordered in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) (orig. proceeding) (per curiam). Therefore, as a threshold matter, a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement. *Rachal*, 403 S.W.3d at 843; *J.M. Davidson, Inc.*, 128 S.W.3d at 227; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(a) (West 2011). In construing an arbitration agreement contained in a

–3–

trust document, we endeavor to enforce the trust "according to the settlor's intent, which we divine from the four corners of unambiguous trusts." *Rachal*, 403 S.W.3d at 844; *see also J.M. Davidson, Inc.*, 128 S.W.3d at 229 (An arbitration provision "is unambiguous if it can be given a definite or certain legal meaning.").[2]

Appellants contend the arbitration provision in section 14.02 of the Trust document requires that this dispute be submitted to arbitration. Relying on the heading of section 14.02, the context in which the word "request" is used in other sections of the Trust document, and the language in section 14.02, appellants specifically argue that, when construed in light of the entire Trust document, the word "request" in the second paragraph of section 14.02 creates a mandatory duty to arbitrate.

Section 16.07(q) of the Trust document states that "[u]nless otherwise specifically provided in this agreement or by the context in which used, we use the word 'shall' in this agreement to command, direct or require[.]" Therefore, when used in the Trust document, the word "shall" imposes a mandatory requirement.

Although the word "request" is not defined in the Trust document, in the context of a will contest, the Texas Supreme Court concluded that "[i]n its ordinary or natural meaning the word 'request' is precatory and not mandatory." *Byars v. Byars*, 182 S.W.2d 363, 364 (Tex. 1944). However,

> It is an error to suppose that the word "request" necessarily imports an option to refuse, and excludes the idea of obedience as a corresponding duty . . . . According to its context and manifest use, an expression of desire or wish will often be equivalent to a positive direction, where that is the evident purpose and meaning of the testator.

---

[2] Neither appellants nor appellees contended in either the trial court or on appeal that the Trust document is ambiguous, and the record does not reflect the trial court found it to be ambiguous. However, the determination of whether an instrument such as a trust document is ambiguous is a question of law that we review de novo. *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Harris v. Hines*, 137 S.W.3d 898, 903 (Tex. App.—Texarkana 2004, no pet.) (construction of will).

*Id.* (quoting *Colton v. Colton*, 127 U.S. 300, 319 (1888))    Therefore, "words of request or expectation are presumably indicative of nothing more, unless the context, or circumstances surrounding the testator at the time of making the will, show that he, though using the language of request, really meant to leave the legatee no option in the matter." *Id.* at 364–65; *see also Henry v. Curb*, 430 S.W.2d 29, 33 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.). Accordingly, we must determine whether the manner in which Clarence and Mildred used "request" in section 14.02 shows an intent that there was a mandatory duty to arbitrate this dispute.

Appellants first assert that, while not dispositive, Clarence and Mildred's choice to title section 14.02 "No Court Proceedings," rather than "Dispute Resolution" or a similar designation, shows an intent that all disputes be subject to arbitration.  However, section 16.10(c) of the Trust document states that headings "are included solely for the convenience and reference of the reader" and "shall have no significance in the interpretation or construction" of the document. Accordingly, we disregard the title of section 14.02 in construing the meaning of the word "request" as used in that section.

Appellants next contend that the manner in which Clarence and Mildred used the word "request" in other parts of the Trust document indicates they intended the arbitration provision in section 14.02 to be mandatory.  Appellants specifically argue that, in other sections of the Trust document, Clarence and Mildred used the phrase "request, but do not require," a precatory usage of the word "request."  Therefore, appellants contend, the use of the word "request" in section 14.02 without the addition of the phrase "but do not require" must have been intended to create a mandatory duty.

Clarence and Mildred defined the word "shall" to mandate the performance of an action and used it over 450 times in the Trust document.  In contrast, they "requested" performance of

certain acts only ten times, with three of those "requests" being made in conjunction with the phrase "but do not require." Clarence and Mildred used the phrase "do not require" only when addressing distributions from the Trust. In section 4.01(d) of the Trust document, Clarence and Mildred requested, but did not require, that the trustee, when making a distribution of an incapacitated grantor's trust property to the other grantor or to a person the trustee determined to be dependent on the incapacitated grantor, consider other income and resources available to the beneficiaries. They requested, but did not require, that the trustee, when making distributions under article 9 of the Trust document relating to discretionary distributions of a portion of the Trust, consider the needs of the beneficiaries as well as other income and resources available to the beneficiaries. Finally, in making distributions to underage and incapacitated beneficiaries, Clarence and Mildred requested, but did not require, in section 12.01 of the Trust document that the trustee consider, to the extent that it was both reasonable and possible, the ability the beneficiary demonstrated in managing prior distributions of trust property.

Clarence and Mildred used the word "request" seven times in the Trust document without adding the phrase "but do not require." Clarence and Mildred requested in section 6.02 of the Trust document that, if a memorandum pertaining to the distribution of tangible personal property was prepared after the Trust document, but could not be legally incorporated by reference into the Trust document, the Trustee distribute the items as set out in the memorandum. They requested in section 7.01(c)(2) of the Trust document that the trustee consider the tax consequences of allocating or distributing certain property to the marital share of the Trust. "Without limiting our Trustee's investment authority in any way," Clarence and Mildred requested in section 15.03 of the Trust document that the trustee exercise reasonable care and skill in selecting and retaining Trust investments, take certain listed factors into account when choosing Trust investments, and consider the possible effects of certain economic conditions,

transaction expenses, and the Trust's need for liquidity when "arranging" the investment portfolio of the Trust. Finally, in addition to the arbitration clause at issue in this appeal, Clarence and Mildred requested in section 14.10 of the Trust document that, if there was more than one qualified trustee and the trustees were unable to concur with respect to a matter as to which they had joint powers, the matter be settled by mediation and, if necessary, arbitration.

The Trust document is comprehensive and addresses all aspects of the funding of the Trust, its administration, the investment of Trust assets, and the distribution of Trust assets under various circumstances. The acts that Clarence and Mildred "requested" in the Trust document vary widely in scope and occur throughout the Trust document. Six of the ten times that Clarence and Mildred used the word "request," they specifically stated the trustee was not required to follow the request or that the request did not limit the trustee's investment authority in any way. Because Clarence and Mildred extensively used the mandatory term "shall" throughout the Trust document and repeatedly took care to clarify that their "requests" were not mandatory, we cannot conclude their failure to add "but do not require" to the "request" in section 14.02 of the Trust document was intended to express an intent that all disputes be resolved through mandatory arbitration.

We finally turn to the language used by Clarence and Mildred in section 14.02 of the Trust document. Appellants argue that, when read together, the two paragraphs in section 14.02 indicate Clarence and Mildred intended that a legal proceeding could be initiated only to seek "'instructions' or 'determinations' that do not involve disputes." Rather, appellants contend, a "dispute" is governed by the second paragraph of section 14.02 and, if the dispute is not resolved

through mediation, it is subject to mandatory arbitration.[3]  We disagree that the language used in section 14.02 demonstrates Clarence and Mildred intended such a distinction.

Section 14.02 of the Trust document first states that the Trust "shall" be "administered" without the intervention, order, approval, or action of a court.  It then provides, however, that the Trust "shall be subject to the jurisdiction of a court only if our Trustee or another interested party institutes a legal proceeding."  It clarifies that a "proceeding to seek instructions or a court determination shall" be filed in a court having jurisdiction over matters relating to the construction or administration of trusts.  Clarence and Mildred then "requested" that any questions or disputes that arose during the administration of the Trust be resolved by mediation or, if necessary, by arbitration.[4]

The record contains no evidence of the circumstances surrounding Clarence and Mildred at the time the Trust was created that would shed any light on the words used in the Trust document.  However, Clarence and Mildred defined the word "shall" to require that an action be performed.  They used the word "shall" over 450 times in the Trust document, clearly indicating they knew how to use mandatory words when it was their intent to do so.  Specifically, Clarence and Mildred's use of the word "shall" in the first paragraph of section 14.02 of the Trust document mandated that the Trust was subject to the jurisdiction of the court in a legal proceeding filed by an interested party.  Nothing in the Trust document indicates Clarence and

---

[3] In parsing the paragraphs of section 14.02, appellees use an example of "where a title company requires a court order to confirm that the Trustee has the power to convey an interest, or if there was a question about whether a Trustee could or could not do something" as a situation in which "there would not be a 'dispute,' but merely a question or the need for an order to clarify a power."  This example ignores Clarence and Mildred's request that "questions" as well as "disputes" be submitted to mediation and, if necessary, arbitration.

[4] In contrast, the arbitration clause in the trust document determined by the *Rachal* court to require the beneficiaries of the trust to arbitrate their claim against the trustee provided:

> *Arbitration*.  Despite anything herein to the contrary, I intend that as to any dispute of any kind involving this Trust or any of the parties or persons concerned herewith (e.g., beneficiaries, Trustees), arbitration as provided herein shall be the sole and exclusive remedy, and no legal proceedings shall be allowed or given effect except as they may relate to enforcing or implementing such arbitration in accordance herewith.  Judgment on any arbitration award pursuant hereto shall be binding and enforceable on all said parties.

*Rachal*, 403 S.W.3d at 842.

Mildred intended to exclude either "questions" or "disputes" from "legal proceedings" or from a "proceeding to seek instructions or a court determination."

Immediately following the mandate that the Trust was subject to the jurisdiction of a court when an interested party filed a legal proceeding, Clarence and Mildred changed, in the second paragraph of section 14.02, from an expression of command to a request that questions and disputes arising during the administration of the Trust be resolved through mediation and, if necessary, arbitration. This change of language is some indication that Clarence and Mildred had an intention different from the mandatory language used in the preceding paragraph subjecting the Trust to the jurisdiction of the court in a legal proceeding filed by an interested party. *See Haltom v. Austin Nat'l Bank*, 487 S.W.2d 201, 203 (Tex. Civ. App.—Austin 1972, writ ref'd n.r.e.) (changing from expression of command to one of desire, "would like," was some indication that testator had different intent from that expressed in previous clause);

We conclude Clarence and Mildred expressed the intent that the Trust would be subject to the jurisdiction of a court if interested parties, such as appellees, filed a legal proceeding. Clarence and Mildred did not limit "legal proceeding" to a "proceeding to seek instructions or a court determination" and did not express the intent that such a proceeding would not encompass a "question" or a "dispute" arising during the administration of the Trust. Clarence and Mildred merely expressed a desire that a question or dispute relating to the administration of the Trust be resolved through mediation and, if necessary, arbitration. This request was precatory, not mandatory. Accordingly, the Trust document did not require appellees to resolve this dispute through arbitration, and the trial court did not err by denying appellants' motion to compel arbitration.

We affirm the trial court's order.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

131341F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PHILLIP DALE ARCHER AND
CRYSTAL LYNN ARCHER, Appellants

No. 05-13-01341-CV          V.

DAVID ALAN ARCHER, STEVEN LEE
ARCHER, AND ANITA SUE HUNTER,
Appellees

On Appeal from the 95th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. 12-01204.
Opinion delivered by Justice Fillmore,
Justices Bridges and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees David Alan Archer, Steven Lee Archer, and Anita Sue Hunter recover their costs of this appeal from appellants Phillip Dale Archer and Crystal Lynn Archer.

Judgment entered this 17th day of June, 2014.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE