**Affirmed and Opinion Filed September 20, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00154-CV**

**SYLVESTER DAVIS, Appellant**
**V.**
**SAMUEL BOYD AND BOYD & ASSOCIATES, P.C., Appellees**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-13920**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

This is an appeal of a final judgment confirming an arbitration award. In two issues, appellant Sylvester Davis argues that the trial court erred by compelling arbitration and by rendering judgment confirming the award because his claims did not fall within the scope of the parties' agreement to arbitrate.

Concluding that Davis agreed to arbitrate his claims, we affirm the trial court's judgment. Because all matters are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

Appellee Samuel Boyd is an attorney and a principal of appellee Boyd & Associates, P.C.[1] Appellant Sylvester Davis at one time worked as a software engineer at Lockheed Martin Corporation. In 2005, Davis retained Boyd to represent him in a *qui tam* lawsuit against Lockheed (the "Underlying Lawsuit").[2] The parties' current dispute arises from this attorney-client relationship.

On August 26, 2010, Davis and Boyd signed a fee agreement ("Fee Agreement") referencing the Underlying Lawsuit and containing an arbitration clause:

### DISPUTE RESOLUTION

Any dispute arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement—**including any claim of legal malpractice, breach of fiduciary duty or similar claim and any claim involving fees or expenses**—shall be resolved by final and binding arbitration conducted in Dallas, Texas, administered by and in accordance with the then-existing JAMS Streamlined Arbitration Rules and Procedures, and any judgment upon any award rendered by the arbitrator may be entered by any state or federal court having jurisdiction to do so.

By so agreeing, you and we are waiving the right to a jury trial. You understand that arbitration provides only limited discovery and that courts will enforce an award in arbitration without reviewing it for errors of fact or law.

(Emphasis added).

---

[1] As the parties do, we refer to Boyd and Boyd & Associates, P.C. together as "Boyd."

[2] The Underlying Lawsuit is captioned *United States ex rel. Sylvester Davis v. Lockheed Martin Corp.*, No. 4:09-CV-645-Y in the United States District Court, N.D. Texas, Fort Worth Division. Davis's claims in the Underlying Lawsuit were made under the federal False Claims Act, 31 U.S.C.A. §§ 3729–3732.

About two years later, Boyd and Davis sought and obtained additional financing for the Underlying Lawsuit from J. Steve Mostyn. The funds from this financing are at issue in this lawsuit.

On March 14, 2012, Davis signed a letter agreement with Mostyn (the "Mostyn Letter"), under which Mostyn agreed to advance Davis a total of $2,750,000. The Mostyn Letter referenced the Underlying Lawsuit and was addressed to Davis "c/o Boyd & Associates" and "Attn: Sam Boyd," on Mostyn's letterhead. The letter began,

> RE  *United States of America ex rel. Sylvester Davis, Individually v. Lockheed Martin Corp., U.S.D.C. N.D. Tex. (Fort Worth) Civil Action No. 4:09-cv-00645-Y*
>
> Dear Mr. Davis:
>
> As I believe you know, Sam Boyd contacted me to inquire as to whether I might be able [to] assist him **in locating a source of financing for your continued prosecution of the above-referenced law suit** (the "Claim"). I have informed Mr. Boyd that I would be willing to advance you the funds you need on the terms set forth in this letter.

(Emphasis added.)

The Mostyn Letter specifically referenced the Fee Agreement between Davis and Boyd. Mostyn stated his understanding that the Fee Agreement allocated fifty-five percent of any recovery in the Underlying Lawsuit to Davis. Mostyn required Davis to "represent and warrant" that he had not assigned and would not assign that fifty-five percent to anyone else. Mostyn agreed to advance the first $1,000,000 of

the funds when Davis signed the Letter and the remaining funds on completion of due diligence.

Davis's repayment of the loan from Mostyn was contingent on his success in the Underlying Lawsuit. The Mostyn Letter included a formula for the calculation, and also provided:

> As security for your payment obligations, you will assign to me your rights under the Fee Agreement and you will execute all other security instruments I may reasonably require you to execute. You also agree, by signing this letter, to designate Sam Boyd or Boyd & Associates or such other party as we may direct to act as escrow agent to receive your share of any recovery from the Claim and to disburse the proceeds in accordance with the final written agreements between us.

Davis filed this lawsuit on June 22, 2018, in Harris County. He pleaded that in March 2012, Boyd assisted him in obtaining the $2.75 million loan from Mostyn. Davis alleged that based on Boyd's false representations about the loan's requirements, Davis paid Boyd $1.25 million from the loan. Davis pleaded causes of action for breach of fiduciary duty and fraud, seeking damages "over $1,000,000.00," costs, interest, attorney's fees, and punitive damages.

Davis specifically pleaded that his claims against Boyd were not related to the Underlying Lawsuit:

> 7. At the time that Mr. Boyd was assisting Mr. Davis in obtaining the $2.75 million loan, Mr. Boyd was representing Mr. Davis in another legal matter, involving a qui tam lawsuit. Mr. Boyd's representation of Mr. Davis in obtaining the subject loan was outside of his representation of Mr. Davis in the qui tam lawsuit and not a part of that representation.

–4–

Boyd's response to the lawsuit included an objection to venue in Harris County, a motion to transfer venue, a motion to compel arbitration, a plea in abatement, and, subject to those matters, an original answer, affirmative defenses, and counterclaims for fraud and breach of contract. The Harris County district court denied Boyd's motion to compel arbitration and plea in abatement, but granted Boyd's motion to transfer venue to Dallas County.

After transfer, Boyd filed a "Motion to Reconsider Motion to Compel Arbitration and Plea in Abatement." Davis responded and also filed a supplemental petition, adding claims for common law negligence, gross negligence, and negligent misrepresentation. The record also includes documentation of the Mostyn loan and two sworn declarations by Davis.

In one of the declarations, Davis explained that his claims in this lawsuit "involve[ ] the Defendants' wrongful taking of my money," specifically, $1.25 million of the $2.75 million loan from Mostyn "and his related company" Equitas Finance Company, LLC. Davis stated that Boyd "act[ed] as my agent" in negotiating the loan, but Boyd "had no written agreement with me" and there was "no agreement with an arbitration clause regarding [Boyd's] negotiation of my $2.75 million loan[3] from Mostyn/Equitas."

---

[3] In his August 10, 2019 declaration, Davis explained that the transaction was referred to as a "loan" for simplicity, but was actually a non-recourse assignment of his property interest in the Underlying Lawsuit.

In his response to Boyd's motion to reconsider, Davis argued "there is no written agreement between [the parties] regarding negotiation of a loan." Davis relied on the Fee Agreement's definition of "Claims," arguing it was too narrow to include claims regarding Mostyn's loan. Davis highlighted the Fee Agreement's language that Boyd agreed to represent him "in connection with the above-captioned False Claims Act lawsuit . . . including the retaliation claims you have raised in that lawsuit and any breach of contract counterclaim brought against you." Davis also quoted the Fee Agreement's "scope of engagement" paragraph providing that "[u]nless specifically requested by you and agreed to in writing by us, you agree that we do not represent you in any other legal matter."

Davis argued that there would have been a separate agreement, in writing, if Boyd was to represent him in the Mostyn loan transaction. He also cited the Fee Agreement's provision that Boyd would advance on Davis's behalf all costs and litigation expenses, and Boyd would be reimbursed for those expenses out of any recovery, for which Davis granted Boyd a lien. He argued that the Fee Agreement "does not pertain" to Boyd's negotiation of the loan from Mostyn because it is not part of the "Claim" as defined in the Fee Agreement and is specifically excluded under the Fee Agreement's terms. He concluded that his claim in this lawsuit does not fall within the Fee Agreement's arbitration clause, and urged the trial court to deny Boyd's motion to reconsider.

After a hearing, the trial court granted Boyd's motion to reconsider and ordered abatement of the case. The parties proceeded to arbitration before Harlan A. Martin of JAMS Dispute Resolution Center. In a written ruling dated October 6, 2020, Martin made findings and conclusions in favor of Boyd and ruled that Davis "shall take nothing on all claims stated."

Back in the trial court, Boyd filed a motion to lift abatement and to confirm the arbitration award. Boyd attached the arbitrator's award and the Fee Agreement to the motion.

On February 22, 2021, the trial court signed a "Final Judgment Confirming Arbitration Award" reciting that "no motion to vacate, modify, or correct the award has been filed." The court confirmed the award and ordered that Boyd recover the $16,611.95 awarded by the arbitrator. On October 11, 2021, the trial court signed a "Final Judgment Nunc Pro Tunc Confirming Arbitration Award." Davis now appeals.

### ISSUES AND STANDARDS OF REVIEW

In two issues, Davis contends the trial court erred by (1) granting Boyd's motion to compel arbitration, and (2) rendering judgment confirming the arbitrator's award.

Orders compelling arbitration may be reviewed after final judgment in the case. *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007) (per curiam) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000)). "A trial court that is

–7–

asked to evaluate the scope of a contract's arbitration clause may summarily decide whether to compel arbitration, based on affidavits, pleadings, discovery, and stipulations." *Am. Emp'rs' Ins. Co. v. Aiken*, 942 S.W.2d 156, 159 (Tex. App.—Fort Worth 1997, no writ). We review a trial court's ruling on a motion to compel arbitration under an abuse of discretion standard. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Under that standard, we defer to the trial court's factual determinations when they are supported by evidence, but review de novo the trial court's legal determinations. *Gray v. Ward*, No. 05-18-00266-CV, 2019 WL 3759466, at *2 (Tex. App.—Dallas Aug. 9, 2019, no pet.) (mem. op.). Whether disputed claims fall within the scope of a valid arbitration agreement is a question of law that we review de novo. *Henry*, 551 S.W.3d at 115.

## DISCUSSION

### 1.　Order compelling arbitration

Davis pleaded that Boyd "took $1.25 million" from the Mostyn loan and in doing so, breached his fiduciary duty and defrauded Davis. Davis contends he did not agree to arbitrate those claims. In his first issue, Davis complains that "there was no basis for the trial court to compel this matter to arbitration," and no agreement to arbitrate under section 171.001 of the Texas Arbitration Act ("TAA"). *See* TEX. CIV. PRAC. & REM. CODE § 171.001 (validity of arbitration agreements).

Boyd bore the burden to establish (1) the existence of an arbitration agreement and (2) that Davis's claims at issue fall within the scope of that agreement. *See*

–8–

*Henry*, 551 S.W.3d at 115. Here, Davis disputes only the agreement's scope. He acknowledges he agreed to arbitrate claims arising from the Underlying Lawsuit, but contends that the loan from Mostyn—and particularly Boyd's actions regarding the loan proceeds—were unrelated to the Underlying Lawsuit. He contends that his claims arising from "the negotiation and funding of the subject loan" are "separate and apart from" Boyd's representation of him in the Underlying Lawsuit. And he argues that the parties' "agreement in the loan negotiation/funding matter" did not contain an arbitration agreement.

"Once a valid arbitration agreement is established, a 'strong presumption favoring arbitration arises' and we resolve doubts as to the agreement's scope in favor of arbitration." *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013). "When determining whether claims fall within the scope of the arbitration agreement, we look to the factual allegations, not the legal claims." *Id.*

"When the contract contains a broadly written arbitration clause, so long as the allegations touch matters, have a significant relationship with, or are inextricably enmeshed or factually intertwined with the contract, the claim will be arbitrable." *Barantas Inc. v. Enter. Fin. Grp., Inc.*, No. 05-17-00896-CV, 2018 WL 3738089, at *7 (Tex. App.—Dallas Aug. 7, 2018, no pet.) (mem. op.) (internal quotation omitted). However, if the facts alleged in support of the claim "stand alone," are "completely independent of the contract" containing the arbitration provision, and

"the claim can be maintained without reference to the contract," then the claim is not subject to arbitration *Id.* (internal quotations omitted).

Davis does not dispute that Boyd acted as his "agent" in negotiating the Mostyn loan. Davis concedes that Boyd contacted Mostyn in the first instance and negotiated the loan's terms. But he argues that the Fee Agreement is specifically limited to the "Claims" it specifically defines, that is, claims "in connection with the above-captioned False Claims Act lawsuit . . . including the retaliation claims you have raised in that lawsuit and any breach of contract counterclaim brought against you . . . ." He further explains that the Fee Agreement required Boyd to pay expenses in the Underlying Lawsuit and granted Boyd a lien for fees and expenses, "but only to the extent of the 'Claims,'" and the "Claims" did not include negotiating the Mostyn loan.

Davis also relies on the Fee Agreement's "Scope of Engagement" paragraph, providing that "[u]nless specifically requested by you and agreed to in writing by us, you agree that we do not represent you in any other legal matter." He contends that the "Scope of Engagement" paragraph makes clear that Boyd represented him only with regard to "his False Claims Act (*qui tam*) claims and his retaliation claims related thereto." He concludes that if Boyd were to represent him on any other matter, including the negotiation and financing of a loan, "then there had to be a separate written agreement, and there was none."

Davis has pleaded, however, that he trusted and relied on Boyd's statements and representations because of the parties' fiduciary relationship as attorney and client. As Boyd argues, that relationship was created here by the Fee Agreement. The Fee Agreement provides that the parties agree to arbitrate "[a]ny dispute arising out of, in connection with, or in relation to the interpretation, performance, or breach of this Agreement," explicitly "including any claim of legal malpractice, breach of fiduciary duty or similar claim and any claim involving fees or expenses." The supporting documentation for the Mostyn loan—proffered in the trial court and relied on by Davis—showed that the purpose of the loan was to finance the Underlying Litigation. Every document on which Davis relies refers to the Underlying Lawsuit.

Davis's claims are for breach of fiduciary duty and negligence arising from Boyd's allegedly false representation that Boyd "was entitled to" $1.25 million from the Mostyn Loan. As Davis himself explained in his August 10, 2019 declaration, the transaction with Mostyn was not actually a "loan." It was a non-recourse transaction that Davis had no obligation to repay unless he recovered on his claim in the Underlying Litigation.[4] The Mostyn letter provided that Mostyn would be repaid, if at all, with a percentage of any proceeds Davis recovered in the Underlying

---

[4] Further, in Davis's assignment of interest to Equitas, the parties "expressly agree[d] that the transaction contemplated by this Agreement is not properly characterized as a loan because, in the event that there are no Proceeds, Davis will not be obligated to repay Equitas any portion of the Assignment Consideration."

Litigation. The funds were for Davis's use both "in financing the Litigation" and "in paying his personal expenses and living costs during the pendency of the Litigation," according to Davis's "Assignment of Interest" to Equitas made pursuant to his agreement with Mostyn.

Davis agreed to arbitrate "any claim of legal malpractice, breach of fiduciary duty or similar claim and any claim involving fees and expenses" "arising out of, in connection with, or in relation to" Boyd's performance or breach of the Fee Agreement. Davis has asserted such a claim in this lawsuit. We conclude that the parties' written agreement to arbitrate is enforceable under TAA § 171.001 and that Davis's claims fall within the agreement's scope. *See Rachal*, 403 S.W.3d at 850. We decide Davis's first issue against him.

## 2. Judgment confirming arbitration award

In his second issue, Davis contends the trial court erred by rendering judgment confirming the arbitration award. He argues that "[s]ince there was no basis in law or fact which permitted [the] trial court to order this matter [to] arbitration, the trial court is prohibited from confirming an arbitration award."

Boyd initially responds that Davis has waived his complaint because he did not file a response to the motion to confirm and did not object to the judgment or file a motion for new trial. Boyd then argues that the trial court did not err by rendering judgment because Davis's claims fell within the agreement's scope.

Assuming Davis preserved his complaint, we have concluded that the trial court did not err by ruling that Davis's claims were within the agreement's scope and by granting Boyd's motion to compel arbitration. For the same reasons, we also conclude the trial court did not err by rendering judgment confirming the arbitration award. We decide Davis's second issue against him.

## CONCLUSION

We affirm the trial court's "Final Judgment Nunc Pro Tunc Confirming Arbitration Award."

210154f.p05

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SYLVESTER DAVIS, Appellant

No. 05-21-00154-CV     V.

SAMUEL BOYD AND BOYD &
ASSOCIATES, P.C., Appellees

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-13920.
Opinion delivered by Justice
Osborne. Justices Myers and Nowell
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Samuel Boyd and Boyd & Associates, P.C. recover their costs of this appeal from appellant Sylvester Davis.

Judgment entered this 20th day of September, 2022.