In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00346-CV**

_____

**SAM HOUSTON ELECTRIC COOPERATIVE, INC., ET AL Appellants**

**V.**

**JOE D. BERRY, ET AL, Appellees**

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause No. CV-15-10279**

**OPINION**

In this accelerated, interlocutory appeal, Sam Houston Electric Cooperative, Inc. and several individual members of the cooperative's management and current and former directors (collectively referred to herein as "SHEC") challenge the trial court's order denying their motion to compel arbitration of purported class action claims and request to stay those proceedings pending arbitration. We reverse the trial court's order and remand the cause with instructions to enter an order compelling arbitration and staying the putative class proceedings pending arbitration.

1

# I.    Background

SHEC is a member-owned, not-for-profit electric cooperative organized under the Texas Electric Cooperative Corporation Act ("ECCA") to provide electricity to its members in rural areas. *See* Tex. Util. Code Ann. § 161.001–.254 (West 2007). Formed in 1939, the cooperative's original Articles of Incorporation (the "Articles") provided that its directors would manage its affairs, and, as permitted by the ECCA, that its bylaws could "be altered, amended or repealed by not less than the affirmative vote of two-thirds (2/3) of all of the Board of Directors at any regular or special meeting." *See* Tex. Util. Code Ann. § 161.064(a). The cooperative's 2012 Bylaws[1] restate that authority, and also provide that "[t]he business and affairs of the Cooperative shall be managed and governed by the Board, . . . [which] shall exercise all of the powers of the Cooperative except such as by Law or the Articles are conferred upon or reserved to the Members." SHEC's Board of Directors is comprised exclusively of qualified members elected by other members.

The record indicates that, as permitted by the ECCA and the original Articles, SHEC amended its Bylaws periodically over time. *See* Tex. Util. Code Ann. §

---

[1] Unless otherwise stated, any reference to "the Bylaws" herein is to the 2012 Bylaws, the earliest version contained in the record on appeal.

161.064(b). In 2012, the Board of Directors adopted amendments to SHEC's Bylaws to include the following arbitration agreement:

> **Section 2.09. Dispute Resolution.** A Member may submit a claim or dispute between the Member and the Cooperative regarding the Governing Documents or Electric Service to the Board for resolution. The Board may establish a policy establishing a procedure for submitting a claim or dispute to the Board. If the Board is unable to resolve the dispute[,] then the Cooperative and the Member shall cooperate to select one or more mediators to help resolve the dispute. If no resolution of the dispute occurs through mediation[,] any party may demand binding arbitration as provided under the laws of the State of Texas.

Lester Berry applied for membership with the cooperative in 1991, and he maintained his membership until the time of his death in late 2015. In early 2016, Lester Berry's son, Joe D. Berry, who was not himself a member, filed suit against the cooperative on behalf of Lester Berry's estate and his surviving heirs.[2] Berry's suit initially asserted wrongful death and survival causes of action, alleging that Lester Berry, who was elderly, in poor health, and required an oxygen concentrator, died after the cooperative terminated electricity service to his home due to an unpaid electric bill. Berry later amended his pleadings to add the individual defendants and to assert several putative class action claims relating to SHEC's management of its

---

[2] For the sake of clarity in light of the shared surname, we will use "Berry" to refer to Joe D. Berry in his various capacities as a party to this suit. Any reference to Lester Berry, deceased, will be by use of his full name.

3

finances, such as claims that SHEC excessively compensated Directors and failed to return unused revenues to members. Citing the arbitration clause contained in its Bylaws, SHEC filed a motion to compel arbitration of the putative class claims only and to stay the proceedings as to those claims pending arbitration. After SHEC filed its motion to compel arbitration, but before the motion was decided, Berry amended his pleadings again to add Guillermo Cano, a member of the cooperative, to the suit as an additional representative of the putative class.

Berry and Cano opposed SHEC's motion to compel, arguing that the arbitration clause was not valid and enforceable because: (1) the arbitration provision was added to the Bylaws after Lester Berry became a member and was not signed by Lester Berry; (2) the agreement is illusory because SHEC maintains a unilateral right to amend or remove the provision by amending its Bylaws; (3) the agreement is procedurally unconscionable because members of the cooperative have little or no choice of electrical service providers; and (4) the claims are not arbitrable because the agreement does not expressly permit class arbitration.

Following a non-evidentiary hearing, the trial court denied SHEC's motion to compel arbitration and to stay the class proceedings pending arbitration. SHEC thereafter filed a motion for the court to reconsider the motion to compel arbitration and, alternatively, to stay the proceedings pending interlocutory appeal. After a

4

second hearing, the trial court denied SHEC's motion to reconsider as well as its motion to stay the proceedings. SHEC timely filed this interlocutory appeal, and this Court granted SHEC's emergency motion to stay the trial court proceedings pending this appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098 (West 2011); Tex. R. App. P. 29.3.

## II.    Standard of Review

This case is governed by the Texas Arbitration Act (the "TAA"),[3] which provides that "[a] written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that: (1) exists at the time of the agreement; or (2) arises between the parties after the date of the agreement." Tex. Civ. Prac. & Rem. Code Ann. § 171.001(a) (West 2011). A party seeking to compel arbitration under the TAA must first establish, as a threshold matter, that there exists a valid arbitration agreement and that the claims in dispute fall within the scope of that agreement. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005);

---

[3] In its brief on appeal, SHEC asserts that the TAA applies. Although the Federal Arbitration Act (the "FAA") preempts the TAA in certain cases, the burden of proof on that issue rests on the party asserting preemption. *See Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011). As no party has asserted preemption in this case, our analysis will proceed under the TAA. Nonetheless, we cite cases decided under both acts, as they share the same core substantive principles. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008) (noting similarities between FAA and the Texas General Arbitration Act, the predecessor to TAA).

*J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003). If the party seeking arbitration establishes the existence of a valid agreement, the burden shifts to the party resisting arbitration to raise an affirmative defense to enforcement. *J.M. Davidson, Inc*., 128 S.W.3d at 227.

"When reviewing a denial of a motion to compel arbitration, we defer to the trial court's factual determinations that are supported by evidence but review the trial court's legal determinations *de novo*." *Rachal v. Reitz,* 403 S.W.3d 840, 843 (Tex. 2013). Whether a valid arbitration agreement exists and whether the claims in dispute fall within the scope of the arbitration agreement are legal questions subject to *de novo* review. *In re Labatt Food Service, L.P.,* 279 S.W.3d 640, 643 (Tex. 2009); *Henry v. Gonzalez*, 18 S.W.3d 684, 691 (Tex. App.—San Antonio 2000, pet. dism'd).

### III.   Analysis

The trial court signed a general order denying SHEC's motion to compel arbitration, and did not issue written findings of fact or conclusions of law.[4] Therefore we address each objection to arbitration raised by Berry and Cano in the

---

[4] The court's oral ruling and statements made during the two hearings on the issue indicate that its denial was based on a finding that the agreement was an adhesion contract and illusory; however, oral comments from the bench do not constitute findings of facts or conclusions of law. *See Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 640 (Tex. App.—Austin 2012, no pet.).

trial court and affirm the court's judgment "if it can be upheld on any legal theory that finds support in the evidence." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990); *Double Eagle Resorts, Inc. v. Mott,* 216 S.W.3d 890, 893 (Tex. App.—Beaumont 2007, no pet.).

## A. Existence of Agreement

Berry and Cano argue that the arbitration provision contained in the 2012 Bylaws is not enforceable against members who joined the cooperative prior to 2012 because the provision lacks mutual assent as to those individuals. Although a party will generally not be bound to an arbitration agreement that he has not signed, nothing in the TAA or in Texas law requires that an arbitration agreement be signed as long as it is in writing and agreed to by the parties. *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 103 (Tex. App.—San Antonio 2016, no pet.). An obligation to arbitrate may bind a non-signatory under state law principles governing the formation of contracts. *In re Rubiola,* 334 S.W.3d 220, 224 (Tex. 2011). One theory under which the Texas Supreme Court has found a non-signatory can be compelled to arbitrate is the equitable doctrine of "direct benefits estoppel." *Rachal*, 403 S.W. 3d at 845–46.

"Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the

7

contract's burdens, such as the obligation to arbitrate disputes." *Kellogg Brown & Root*, 166 S.W.3d at 739. A non-signatory that engages the litigation process to bring claims based on certain terms of a contract cannot avoid an arbitration provision within that same contract. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755–56 (Tex. 2001) (holding that non-signatory parties' suit on the contract manifested their assent to the contract's terms, including the arbitration provision contained therein). Rather, such a non-signatory should be compelled to arbitrate if he or she seeks, by his claims, "to derive a direct benefit from the contract containing the arbitration provision." *Kellogg Brown & Root*, 166 S.W.3d at 741. A claim seeks a direct benefit from a contract if liability on the claim "arises solely from the contract or must be determined by reference to it." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005). This determination "turns on the substance of the claim, not artful pleading." *Id.* at 131–32. Thus, we look to the substance of Berry and Cano's pleadings to determine whether their putative class claims seek a direct benefit from the Bylaws that contain the arbitration provision, or whether, as Berry and Cano argue, the claims merely "touch upon" the Bylaws.

Berry and Cano attached the 2012 Bylaws as an exhibit to their third amended petition,[5] and cited extensively to those Bylaws throughout the pleading. They affirmatively assert that the 2012 Bylaws, which contain the arbitration clause, form a contract between SHEC and its members.[6] In fact, they explicitly seek relief in the form of a judicial declaration that "[t]he Bylaws and Articles constitute a binding and enforceable contract between SHEC and SHEC's Board on the one hand and the SHEC members and certain non-members (i.e., patrons) on the other[,]" along with other declaratory relief relating to SHEC's purported obligations under the 2012 Bylaws. They assert a claim for breach of contract, averring that SHEC "breached its contractual obligations under the Bylaws and Articles," that "[t]he Bylaws, by their explicit terms, constitute a valid, enforceable contract" and that Berry and Cano "as members and patrons of SHEC, are parties to the contract evidenced by the Bylaws and Articles and thus have standing to sue for its breach." They seek actual, compensatory damages for "the injury caused by the breaches of the Bylaws and

---

[5] The third amended petition was the live pleading at the time the trial court denied SHEC's motion to compel arbitration. Their second amended petition, the live pleading at the time SHEC initially filed its motion to compel arbitration, had the cooperative's 2014 Bylaws attached. The 2014 Bylaws contain the same arbitration provision as the 2012 Bylaws.

[6] The petition states that, to the extent that the Bylaws conflict with the Articles of Incorporation or the ECCA, the Bylaws are void and unenforceable; however, at no point have they alleged that the arbitration provision conflicts with the Articles or the ECCA.

9

Articles[.]" Further, Berry and Cano allege a cause of action for conversion relating to capital accounts that SHEC maintains for each member. These accounts are created and maintained pursuant to the Bylaws, which establish the procedure for allocation of capital credits and losses and set forth the manner in which the capital credits are to be retired. Finally, Berry and Cano assert that SHEC owes the cooperative's members a fiduciary duty created, *inter alia*, "[b]y the Bylaws and Articles as a matter of contract." They specifically aver that "[b]y virtue of the contractual relationship created by the Bylaws, SHEC holds [excess revenues] in trust for the benefit of the patrons. Under this arrangement, SHEC and the officers and directors of SHEC are trustees of that trust."

Each of these claims asserted by Berry and Cano arise from or in relation to, and therefore seek a direct benefit from, the 2012 Bylaws; they do not merely "touch upon" them. A suit seeking damages for breach of specific contractual obligations necessarily arises from the contract, and a suit for judicial declaration of rights under a specific instrument cannot be determined without reference to that instrument. Accordingly, by seeking to enforce and benefit from the 2012 Bylaws as a valid and enforceable contract, Berry and Cano have manifested their assent to that contract, and are thereby bound to its provisions. *See FirstMerit Bank*, 52 S.W.3d at 755–56.

In other words, Berry and Cano "cannot both have [their] contract and defeat it too." *Weekley Homes, L.P.*, 180 S.W.3d at 135.

Berry and Cano argue that the doctrine of direct benefits estoppel does not apply in this case because their claims derive from SHEC's "general obligations imposed by" the ECCA and the Internal Revenue Code, and therefore their claims stand independent of the Bylaws. *See In re Morgan Stanley & Co.*, 293 S.W.3d 182, 184 n.2 (Tex. 2009) (noting that equitable estoppel is inapplicable when the substance of a claim arises not directly from the contract, but from general obligations imposed by state or federal law). We find this argument unpersuasive. While it is true that both the ECCA and the Internal Revenue Code contain regulations applicable to SHEC, neither the ECCA nor the Internal Revenue Code can be the source of the putative class claims because neither provides for a private cause of action against a non-governmental actor such as SHEC. *See Denton Cty. Elec. Co-op., Inc. v. Hackett*, 368 S.W.3d 765, 781–83 (Tex. App.—Fort Worth 2012, pet. denied) (holding that the ECCA does not provide a member of an electric cooperative with a private right of action against the cooperative for breach of fiduciary duty because the ECCA creates no fiduciary duty); *Alpert v. Riley*, 274 S.W.3d 277, 293 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding that there can be no private cause of action for alleged violations of regulations

11

promulgated under the Internal Revenue Code except against the U.S. Government because the tax code's administrative remedies were intended by Congress to be an exclusive enforcement scheme). Thus, despite the inclusion of references to the ECCA and the Internal Revenue Code in their pleadings, the only viable causes of action for Berry and Cano's putative class claims arise from, and do not stand independent of, the Bylaws. *See, e.g., Denton Cty Elec. Co-op.*, 368 S.W.3d at 783 (noting that where an electrical cooperative's bylaws were, by their own terms, contractual in nature, putative class's proper recourse was a breach of contract claim rather than a claim for breach of statutory duty).

On appeal, Berry and Cano also argue that, although their "claims may, in some respects, touch upon the 2012 or 2014 Bylaws," the doctrine of direct benefits estoppel does not apply to them because their claims do not "depend on the existence of" the specific arbitration provision contained in the Bylaws. This argument ignores the fact that the arbitration provision is but one part of a larger, comprehensive contract, and it is the very principle of the doctrine of direct benefits estoppel that prevents a party from enforcing the parts of a contract that benefit him while seeking to invalidate the parts that do not. *See Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006) ("When a party's right to recover and its damages depend on the agreement containing the arbitration provision, the party is relying on the agreement

12

for its claims."). As discussed herein, the class claims asserted in this case arise directly from the contract that Berry and Cano seek to enforce; therefore direct benefits estoppel applies.

**B.    Dispute Within Scope of Agreement**

In addition to establishing the existence of an enforceable arbitration agreement, SHEC must also establish that the dispute at issue falls within the scope of the provision. "Once a valid arbitration agreement is established, a 'strong presumption favoring arbitration arises[,]' and we resolve doubts as to the agreement's scope in favor of arbitration." *Rachal,* 403 S.W.3d at 850 (quoting *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011)).

Berry and Cano argue that the arbitration provision cannot be enforced against them because claims arising before the bylaws were amended in 2012 cannot procedurally fall within the scope of the arbitration agreement. To determine whether claims fall within or outside of the scope of an arbitration agreement, we look to the factual allegations rather than the legal claims asserted. *Id*.

In their pleadings, Berry and Cano complain of excessive compensation for officers and directors of the cooperative as compared to hours worked, citing only compensation paid and hours worked in 2014. They complain of failure to return excess revenue, identifying only revenues received by the cooperative in 2011 and

13

2014. They allege a failure to retire capital credits, referencing patronage capital reported in the years 2012, 2013, and 2014, and attaching as exhibits (1) SHEC's 2014 IRS filing; (2) a chart listing revenues SHEC returned to members from 2011 through 2014; (3) a comparative analysis of revenues returned to members of other electric cooperatives from 2012 through 2014; and (4) SHEC's 2014 Annual Report. Furthermore, Cano, the only named plaintiff that is an actual member of the cooperative, first attained his membership in 2012. Any "capital credits that [have] accrued to him during his membership," could only have accrued after that date. Finally, asserting that SHEC's pre-2012 conduct cannot be subject to the 2012 Bylaws ignores that it is Berry and Cano themselves who seek to impose the contractual obligations contained in that instrument against SHEC. The vast majority of the factual allegations that have been asserted by Berry and Cano do not, procedurally, fall outside of the scope of the 2012 Bylaws. Moreover, "to come within the scope of the arbitration provision, a party's allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision." *In re Bath Junkie Franchise, Inc.,* 246 S.W.3d 356, 367 (Tex. App.—Beaumont 2008, no pet.). Accordingly, viewing Berry and Cano's factual allegations and resolving any doubts

14

regarding the provision's scope in favor of arbitration, we find that the putative class claims are within the scope of the agreement.

## C.     Affirmative Defenses to Arbitration

Having found that SHEC met its threshold burden, we consider now whether Berry and Cano, as the parties opposing arbitration, have met their burden to establish an affirmative defense to enforcement. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227.

### 1.     Illusory Agreement

Berry and Cano assert that the arbitration agreement is illusory and unenforceable because SHEC maintained a unilateral right to amend its Bylaws and thereby change the arbitration provision to avoid performance.

A challenge to a contract's validity or enforceability on the basis that the agreement is illusory is a challenge to the consideration supporting the contract. *See In re 24R, Inc.,* 324 S.W.3d 564, 567 (Tex. 2010). A stand-alone arbitration agreement requires binding promises on both sides in order to be enforceable, as that mutual promise is the only consideration exchanged to create the contract. *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 607 (Tex. 2005). However, when an arbitration clause is but one part of a larger underlying contract, the required consideration can be provided by the rest of the parties' mutual obligations. *See id.;*

15

*see also Jim Walter Homes, Inc. v. Ayers*, No. 09-05-226-CV, 2005 WL 3006844, at \*2 (Tex. App.—Beaumont Nov. 10, 2005, no pet.) (mem. op.). Berry and Cano do not contest the sufficiency of consideration to support the underlying contract in this matter; to the contrary, they steadfastly rely upon the asserted validity of the 2012 Bylaws as a contract that they seek to enforce against SHEC. As we have already determined that the doctrine of direct benefits estoppel prevents Berry and Cano from selectively enforcing the provisions of the 2012 Bylaws that benefit them while simultaneously attacking the provision they do not like, we reject their argument that the lack of independent consideration allows them to carve out the distasteful provisions of a contract they otherwise seek to enforce. *See Rachal*, 403 S.W. 3d at 848 (rejecting a non-signatory's attempt to invalidate an arbitration provision in a trust agreement based on lack of consideration because the party had accepted benefits under the agreement and was suing to enforce its terms); *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008) (noting that "arbitration clauses generally do not require mutuality of obligation so long as adequate consideration supports the underlying contract"). "As equitable defensive theories, direct benefits estoppel and promissory estoppel promote fairness by holding a party to its position in the performance of an agreement or in bringing litigation." *Rachal*, 403 S.W. 3d

at 848; *see also FirstMerit Bank*, 52 S.W.3d at 755 (holding that "a litigant who sues based on a contract subjects him or herself to the contract's terms").

### 2.    Procedural Unconscionability

Berry and Cano further asserted in the trial court that the arbitration agreement is procedurally unconscionable because many of the cooperative's members have no choice of electrical service providers and no bargaining power in relation to the Bylaws. These bare factual assertions were contained in unverified pleadings and were otherwise not supported in the trial court by any affidavits or other evidence, and Berry and Cano do not advance the argument or brief the issue on appeal.

"A party seeking to avoid arbitration on unconscionability grounds bears the burden of proof." *Amateur Athletic Union*, 499 S.W.3d at 107. Although a reviewing court will, in the absence of findings of fact or conclusions of law, presume that a trial court made any necessary finding of fact to support a ruling, we cannot imply a factual finding that is not supported by evidence. *See Moncrief Oil Int'l Inc. v. OAO Gazprom,* 414 S.W.3d 142, 150 (Tex. 2013). Without any evidence supporting a claim of unconscionability, we find that Berry and Cano failed to meet their burden on this affirmative defense.

17

### 3. Class Claims are Not Arbitrable

Finally, Berry and Cano argue that their putative class action claims are not arbitrable because the arbitration provision contained in the 2012 Bylaws does not specifically consent to class arbitration. In support of this argument, they rely upon an opinion from the United States Supreme Court in *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, which held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." 559 U.S. 662, 684 (2010). We find Berry and Cano's reliance on *Stolt–Nielsen* misplaced, as that case does not stand for the proposition that a claimant can avoid an otherwise enforceable arbitration agreement by asserting claims on behalf of an entire class; rather, it addressed under what circumstances an arbitrator could compel parties in arbitration to proceed as a class. *See id.* at 685;[7] *see also Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 197 (5th Cir. 2016) (holding that *"Stolt–Nielsen* does not overrule prior Supreme

---

[7] Notably, the Second Circuit Court of Appeals in the underlying proceedings had already determined that Stolt-Nielsen was entitled to compel arbitration of the antitrust claims brought against it by AnimalFeeds International and other claimants in several consolidated cases. *See Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 667–68 (2010); *see also JLM Industries, Inc. v. Stolt-Nielsen S.A.*, 387 F.3d 163 (2nd Cir. 2004). On appeal to the Supreme Court, the parties did not dispute that the claims had to be arbitrated; the question was whether, once in arbitration, the arbitration panel had the authority to allow AnimalFeeds International to proceed on behalf of a class over Stolt-Nielsen's objection. *Stolt-Nielsen*, 559 U.S. at 668.

Court and Fifth Circuit decisions requiring questions of arbitrability, including the availability of class mechanisms, to be deferred to arbitration by agreement"); *Pedcor Mgmt. Co. Inc. Welfare Benefit Plan v. Nations Personnel of Tex., Inc.,* 343 F.3d 355, 363 (5th Cir. 2003) (providing that where arbitration agreement language is broad, it is the arbitrator, rather than the court, that "should decide whether class arbitration is available or forbidden"). Parties have a right to contract for arbitration; however, "there is no entitlement to proceed as a class action." *AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 195–96 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (rejecting the notion that the right to proceed on a class-wide basis supersedes a contracting party's right to compel arbitration). Thus, where a claimant seeks to bring claims on behalf of a class, an otherwise valid arbitration provision must be enforced and the issue of class certification becomes one of contract construction appropriately left to the arbitrator. *See In re Wood,* 140 S.W.3d 367, 369 (Tex. 2004). We therefore reject Berry and Cano's argument that their attempt to achieve class certification nullifies an otherwise enforceable arbitration agreement.

Based on the foregoing, we reverse the trial court's order denying SHEC's motion to compel arbitration and remand for entry of an order compelling arbitration

19

and staying further proceedings as to Berry and Cano's class action claims pending arbitration.

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on December 28, 2016
Opinion Delivered September 28, 2017

Before McKeithen, C.J., Kreger and Johnson, JJ.